**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TOMMY HILFIGER LICENSING LLC, | ) | |
| | ) | Case No. 17-cv-04743 |
| Plaintiff, | ) | |
| | ) | **Judge Samuel Der-Yeghiayan** |
| v. | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| ZHILI HUANG, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY TRANSFER OF THE DEFENDANT DOMAIN
<u>NAMES, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY</u>**

Plaintiff Tommy Hilfiger Licensing LLC ("Plaintiff" or "Tommy Hilfiger") submits this

Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order

("TRO"), including a temporary injunction, a temporary transfer of the Defendant Domain

Names, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  STATEMENT OF FACTS ..................................................................................... 2

    A.   Tommy Hilfiger's Trademarks and Products ........................................... 2

    B.   Defendants' Unlawful Activities ............................................................. 4

III. ARGUMENT ........................................................................................................ 5

    A.   Standard for Temporary Restraining Order and Preliminary Injunction ................. 6

    B.   Tommy Hilfiger Will Likely Succeed on the Merits of Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims .................. 7

    C.   There Is No Adequate Remedy at Law, and Tommy Hilfiger Will Suffer Irreparable Harm in the Absence of Preliminary Relief ......................................... 9

    D.   The Balancing of Harms Tips in Tommy Hilfiger's Favor, and the Public Interest Is Served by Entry of the Injunction ........................................................ 10

IV.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........................................... 11

    A.   A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Tommy Hilfiger's Marks Is Appropriate ........................... 11

    B.   Transferring the Defendant Domain Names to Tommy Hilfiger's Control Is Appropriate ...................................................................................... 12

    C.   Preventing the Fraudulent Transfer of Assets Is Appropriate ................................ 13

    D.   Tommy Hilfiger Is Entitled to Expedited Discovery ............................................ 14

V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................ 15

VI.  CONCLUSION .................................................................................................... 15

**MEMORANDUM OF LAW**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Tommy Hilfiger Licensing LLC ("Plaintiff" or "Tommy Hilfiger") is requesting temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") against the defendants identified on Schedule "A" to the Amended Complaint (collectively, the "Defendants"). As alleged in Tommy Hilfiger's Amended Complaint, Defendants are selling and/or offering for sale unauthorized and unlicensed counterfeit products using counterfeit versions of Tommy Hilfiger's federally registered trademarks (the "Counterfeit Tommy Hilfiger Products"), through various fully interactive, commercial Internet stores operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores").

Defendants run a sophisticated operation and are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase Counterfeit Tommy Hilfiger Products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Tommy Hilfiger is forced to file this action to combat Defendants' counterfeiting of the registered Tommy Hilfiger trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Tommy Hilfiger Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Tommy Hilfiger respectfully requests that this Court issue *ex parte* a TRO.

1

## II.    STATEMENT OF FACTS

### A.  Tommy Hilfiger's Trademarks and Products

Tommy Hilfiger, along with its affiliated company Tommy Hilfiger U.S.A., Inc., designs, sources, distributes, sells, and markets throughout the United States, including Illinois, quality apparel, accessories and other products, all of which prominently display its famous, internationally-recognized and federally-registered trademarks (collectively, the "Tommy Hilfiger Branded Products").  Declaration of Alastair Gray, the "Gray Declaration," at ¶ 3. Tommy Hilfiger Branded Products have become enormously popular and even iconic, driven by Tommy Hilfiger's arduous quality standards and innovative design.  *Id.*  Among the purchasing public, Tommy Hilfiger Branded Products are instantly recognizable as such.  *Id.*  Tommy Hilfiger Branded Products have been continuously sold under the Tommy Hilfiger trademarks in the United States for many years.  *Id.* at ¶ 4.  Tommy Hilfiger Branded Products are distributed and sold to consumers through department stores, retail stores and authorized e-commerce sites throughout the United States and in Illinois, including through the official e-commerce tommy.com website launched in 2004.  *Id.*

Tommy Hilfiger incorporates a variety of distinctive marks in the design of its various Tommy Hilfiger Branded Products.  *Id.* at ¶ 5.  As a result of this long-standing use, Tommy Hilfiger owns common law trademark rights in its trademarks.  *Id.*  Tommy Hilfiger has also registered its trademarks with the United States Patent and Trademark Office.  Tommy Hilfiger Branded Products typically include at least one of the federally registered Tommy Hilfiger trademarks.  *Id.*  Tommy Hilfiger uses its trademarks in connection with the marketing of its Tommy Hilfiger Branded Products, including the federally registered marks collectively referred to as the "Tommy Hilfiger Trademarks."  *Id.*  True and correct copies of the United States trademark registrations for the Tommy Hilfiger Trademarks are attached to the Gray Declaration

as Exhibit 1. The U.S. registrations for the Tommy Hilfiger Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 6. The registrations for the Tommy Hilfiger Trademarks constitute *prima facie* evidence of their validity and of Tommy Hilfiger's exclusive right to use the Tommy Hilfiger Trademarks. 15 U.S.C. § 1057 (b).

The Tommy Hilfiger Trademarks are exclusive to Tommy Hilfiger and are displayed extensively on Tommy Hilfiger Branded Products and in Tommy Hilfiger's marketing and promotional materials. Gray Declaration at ¶ 7. Tommy Hilfiger Branded Products have long been among the most popular and recognizable of their kind, and have been extensively promoted and advertised at great expense. *Id.* In fact, Tommy Hilfiger has expended millions of dollars annually in advertising, promoting and marketing featuring the Tommy Hilfiger Trademarks. *Id.* Because of these and other factors, the Tommy Hilfiger Trademarks are famous marks as that term is used in 15 U.S.C. § 1125(c)(1). *Id.* The Tommy Hilfiger Trademarks are distinctive when applied to the Tommy Hilfiger Branded Products, signifying to the purchaser that the products come from Tommy Hilfiger and are manufactured to Tommy Hilfiger's quality standards. *Id.* at ¶ 8. As such, the goodwill associated with the Tommy Hilfiger Trademarks is of incalculable and inestimable value to Tommy Hilfiger. *Id.*

In recent years, annual sales of products bearing the Tommy Hilfiger Trademarks have totaled in the hundreds of millions of dollars within the United States. *Id*. at ¶ 9. Since at least as early as 2004, Tommy Hilfiger has operated a website where it promotes and sells genuine Tommy Hilfiger Branded Products at tommy.com. *Id*. Sales of Tommy Hilfiger Branded Products via the tommy.com website represent a significant portion of Tommy Hilfiger's business. *Id*. The tommy.com website features proprietary content, images and designs

exclusive to the Tommy Hilfiger brand. *Id.* Tommy Hilfiger has expended substantial time, money and other resources developing, advertising and otherwise promoting the Tommy Hilfiger Trademarks. *Id.* at ¶ 10. As a result of these efforts, members of the consuming public readily identify merchandise bearing or sold under the Tommy Hilfiger Trademarks as being quality Tommy Hilfiger Branded Products. *Id.*

**B. Defendants' Unlawful Activities**

The success of the Tommy Hilfiger brand has resulted in its significant counterfeiting. Consequently, Tommy Hilfiger has an international anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id.* at ¶ 11. In recent years, Tommy Hilfiger has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Tommy Hilfiger Products to consumers in this Judicial District and throughout the United States. *Id.* Despite Tommy Hilfiger's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. *Id.*

Tommy Hilfiger's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Tommy Hilfiger Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. In the event that Defendants provide additional credible information regarding their identities, Tommy Hilfiger will take appropriate steps to amend the Amended Complaint.

### III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Tommy Hilfiger's reputation and the goodwill symbolized by its trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Tommy Hilfiger Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts, including PayPal accounts. See Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 5-9. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Tommy Hilfiger respectfully requests that the Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so

related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of the Tommy Hilfiger Trademarks. *See* Amended Complaint at ¶¶ 2, 13, and 21–22. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu, et al.,* 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Tommy Hilfiger substantial injury in the State of Illinois.

## A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such

harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Tommy Hilfiger Will Likely Succeed on the Merits of Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Tommy Hilfiger's Lanham Act and UDTPA claims involve the same elements. See *Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 C 400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. See 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the mark is likely to cause confusion among consumers. *Id.*

In this case, Tommy Hilfiger's Tommy Hilfiger Trademarks are registered with the United States Patent and Trademark Office and have been used continuously for many years. Gray Declaration at ¶¶ 4 and 6. The registrations for the Tommy Hilfiger Trademarks are valid,

subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 6. The Tommy Hilfiger Trademarks constitute *prima facie* evidence of their validity and of Tommy Hilfiger's exclusive right to use the Tommy Hilfiger Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Tommy Hilfiger has never licensed or authorized Defendants to use its Tommy Hilfiger Trademarks, and none of the Defendants are authorized retailers of genuine Tommy Hilfiger Branded Products. *Id*. at ¶ 13. Thus, Tommy Hilfiger satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the Tommy Hilfiger Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Tommy Hilfiger has submitted extensive documentation showing that Defendants are selling Counterfeit Tommy Hilfiger Products that look similar to genuine Tommy Hilfiger Branded Products and use counterfeit marks identical to the Tommy Hilfiger Trademarks. Both Tommy Hilfiger and Defendants advertise and sell their products to consumers via the Internet,

targeting consumers looking for genuine Tommy Hilfiger Branded Products. Gray Declaration at ¶¶ 4, 11. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Tommy Hilfiger Branded Products from Counterfeit Tommy Hilfiger Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Tommy Hilfiger Branded Products to purchase Counterfeit Tommy Hilfiger Products instead. In that regard, Defendants use the Tommy Hilfiger Trademarks in many of their Defendant Domain Names, and they advertise Counterfeit Tommy Hilfiger Products using the Tommy Hilfiger Trademarks. Gray Declaration at ¶ 11. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Tommy Hilfiger Branded Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Tommy Hilfiger is likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin, and violation of the UDTPA.

### C. There Is No Adequate Remedy at Law, and Tommy Hilfiger Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and

quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the Tommy Hilfiger Trademarks has and continues to irreparably harm Tommy Hilfiger through diminished goodwill and brand confidence, damage to Tommy Hilfiger's reputation, loss of exclusivity, and loss of future sales. Gray Declaration at ¶¶ 19-23. The extent of the harm to Tommy Hilfiger's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Tommy Hilfiger will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Gray Declaration at ¶ 24.

### D. The Balancing of Harms Tips in Tommy Hilfiger's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Tommy Hilfiger has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Tommy Hilfiger will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the

trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Tommy Hilfiger has demonstrated, Defendants have been profiting from the sale of Counterfeit Tommy Hilfiger Products. Thus, the balance of equities tips decisively in Tommy Hilfiger's favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Tommy Hilfiger's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Tommy Hilfiger seeks is specifically intended to remedy that injury by dispelling public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Tommy Hilfiger's Marks Is Appropriate

Tommy Hilfiger requests a temporary injunction requiring the Defendants to immediately cease all use of the Tommy Hilfiger Trademarks, or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the Tommy Hilfiger Trademarks and associated goodwill, as well as harm to consumers, and

to prevent the Defendants from continuing to benefit from their unauthorized use of the Tommy Hilfiger Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Tommy Hilfiger is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Tommy Hilfiger Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

**B. Transferring the Defendant Domain Names to Tommy Hilfiger's Control Is Appropriate**

As a part of the Temporary Restraining Order, Tommy Hilfiger also seeks temporary transfer of the Defendant Domain Names to Tommy Hilfiger's control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished). As such, Tommy Hilfiger respectfully requests that, as part of the TRO, the Court require the relevant registries and/or registrars for the Defendant Domain Names to transfer the Defendant Domain Names to Tommy Hilfiger.

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Tommy Hilfiger requests an *ex parte* restraint of Defendants' assets so that Tommy Hilfiger's right to an equitable accounting of Defendants' profits from sales of Counterfeit Tommy Hilfiger Products is not impaired.[1]  Issuing an *ex parte* restraint will ensure Defendants' compliance.  If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered.  Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Tommy Hilfiger meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity.  *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007).  In addition, Tommy Hilfiger has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Tommy Hilfiger is entitled, "subject to the principles of equity, to recover ... defendant's profits."  Tommy Hilfiger's Amended Complaint seeks, among other relief, that Defendants account for and pay to Tommy Hilfiger all profits realized by Defendants by reason of Defendants' unlawful acts.  Therefore, this Court has the inherent equitable authority to grant Tommy Hilfiger's request for a prejudgment asset freeze to preserve relief sought by Tommy Hilfiger.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes.  *Lorillard Tobacco Co. v.*

---

[1] Tommy Hilfiger has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

*Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Tommy Hilfiger has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. Tommy Hilfiger Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Tommy Hilfiger respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Tommy Hilfiger's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished).

Tommy Hilfiger's seizure and asset restrain may have little meaningful effect without the requested relief. Accordingly, Tommy Hilfiger respectfully requests that expedited discovery be granted.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Tommy Hilfiger's evidence of counterfeiting, infringement, and unfair competition, Tommy Hilfiger respectfully requests that this Court require Tommy Hilfiger to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI.     CONCLUSION

Defendants' counterfeiting operations are irreparably harming Tommy Hilfiger's business, its famous Tommy Hilfiger brand, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit Tommy Hilfiger Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Tommy Hilfiger Products have been manufactured by or emanate from Tommy Hilfiger, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, Tommy Hilfiger respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 29th day of June 2017.     Respectfully submitted,


                                                 /s/ Justin R. Gaudio
                                                 Kevin W. Guynn
                                                 Amy C. Ziegler
                                                 Justin R. Gaudio
                                                 Jessica L. Bloodgood
                                                 Greer, Burns & Crain, Ltd.
                                                 300 South Wacker Drive, Suite 2500
                                                 Chicago, Illinois 60606
                                                 312.360.0080 / 312.360.9315 (facsimile)
                                                 kguynn@gbc.law
                                                 aziegler@gbc.law
                                                 jgaudio@gbc.law
                                                 jbloodgood@gbc.law

                                                 *Counsel for Plaintiff*
                                                 *Tommy Hilfiger Licensing LLC*